## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

Inspection of the workplace
located at and near

Case No. 8:25MJ357

Bldg. 1200
305 Looking Glass Avenue
Offutt AFB
Sarpy County, Nebraska 68113

under the control or custody of

AMENTUM SERVICES, INC.

### APPLICATION FOR ADMINISTRATIVE SEARCH WARRANT UNDER
### THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

I, Scott Jacobson, an Assistant Area Director of the Omaha Area Office, Occupational

Safety and Health Administration, United States Department of Labor, hereby apply for an

administrative search warrant pursuant to section 8 of the Occupational Safety and Health Act of

1970, 29 U.S.C. §§ 651-678, 657, hereinafter referred to as the OSH Act, to inspect and investigate

the workplace of Amentum Services, Inc. located at Bldg. 1200, 305 Looking Glass Avenue, Offutt

AFB, Sarpy County, Nebraska 68113. As grounds for the issuance of the warrant, I state:

1.      I am an Assistant Area Director of OSHA's Omaha Area Office. In that capacity, I

supervise the inspection activities of the OSHA Compliance Safety and Health Officers (referred

to as "CSHO") who conduct safety and health inspections of workplaces. Moreover, I have been

designated the responsibility of making applications for inspection warrants under sections 8(a)

and 8(f)(1) of the Act, 29 U.S.C. § § 657(a) and 657(f)(1).

1

2.      Amentum Services, Inc. ("Amentum") is a corporation believed to be engaged in the business of providing guard and patrol services, which has a NAICS code of 561612.

3.      The workplace described in the above caption is the place of occupation of employees who are employed by Amentum. This workplace has been selected for inspection as a result of complaints made by two current Amentum employees. OSHA received the first complaint via its electronic complaint system on April 9, 2025. The employee alleged, among other things, potential worker exposure to crystalline silica at a construction site at the workplace. That same day, CSHO Richard Razey contacted the employee to gather additional information about the complaint, and the complaint was reduced to writing. OSHA also received the second complaint on April 9, 2025. This employee also alleged potential worker exposure to crystallized silica at a construction site at the workplace. CSHO Richard Razey also contacted this second employee on April 9 to gather additional information about the complaint, and the complaint was reduced to writing. The specific complaints made by the employees are set forth in the Notices of Alleged Safety or Health Hazards, which is attached hereto as Exhibit A and incorporated herein.[1]

4.      The authority for issuance of the administrative search warrant is section 8 of the OSH Act and Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816 (1978). Section 8(a) of the OSH Act, 29 U.S.C. § 657(a), specifically authorize the Secretary of Labor to inspect and investigate any factory, plant, establishment, construction site, or other area, workplace, or environment where work is performed by an employee of an employer. Inspections are also mandated under section 8(f) of the OSH Act, 29 U.S.C. § 657(f), which provides that an employee who believes that a violation of a safety or health standard exists that threatens physical harm may request an inspection by giving written notice to the Secretary of Labor of such violation or danger.

---

[1] Said complaints have been purged of matters that might reveal the complainant's identity, pursuant to section 8(f)(1) of the OSH Act, 29 U.S.C. § 657(f)(1).

Upon receipt of a complaint under section 8(f)(1), the Secretary of Labor is authorized to conduct an inspection if "the Secretary determines there are reasonable grounds to believe that such violation or danger exists." 29 U.S.C. § 657(f).

5.      Sections 8(a) and 8(f) are implemented in part by Chapter 9 of the Field Operations Manual (FOM), CPL 02-00-164 (hereinafter "CPL 02-00-164"), attached hereto as Exhibit B and incorporated herein. Following receipt of a formal complaint, an inspection is warranted if at least one of the conditions in paragraph I.C., Criteria Warranting an Inspection, is met. Ex. B, CPL 02-00-164, para. I.C.

6.      The allegations made by two current Amentum employees to OSHA,  as set forth in Exhibit A, constitute formal complaints concerning potential employee exposure to serious physical or health hazard in the workplace, thus warranting an inspection. See Ex. A, CPL 02-00-164, para. I.C.1 & I.C.3. I have evaluated the conditions alleged in the complaints and based on this evaluation have determined that there are reasonable grounds to believe that there are possible violations of 29 U.S.C. § 654(a) and the safety and health standards enforced pursuant to that section including, but not limited to, the standards on respirable crystalline silica at 29 C.F.R. § 1910.1053 or § 1926.1153 (Respirable crystalline silica), and 29 C.F.R. § 1926.55 (Gases, vapors, fumes, dusts, and mists).

7.      Additionally, an inspection is warranted because the information provided by the complainants concerns alleged hazards covered by a national emphasis program ("NEP"). Ex. A, CPL 02-00-164, para. I.C.4. Potential worker exposures to respirable crystalline silica in general industry, maritime, and construction fall under the NEP on Respirable Crystalline Silica ("RCS"), CPL 03-00-023 (hereinafter "CPL 03-00-023"), attached hereto as Exhibit C and incorporated herein. Complaints for any general industry, maritime, or construction operation alleging potential

3

worker exposures to RCS or involving workers with symptoms of exposure to RCS "shall be treated as having priority and a health inspection shall be conducted." Ex. C, CPL 03-00-023, para. XI.C.1.a.

8.      Because the complaints met more than one of the criteria of Section I.C of CPL 02-00-164 (i.e., the complaints alleged violations of the OSH Act and its implementing regulations and the hazards alleged were covered by an NEP), "the Area Office [wa]s authorized to conduct an inspection." Ex. A, CPL 02-00-164, para. I.H.3.

9.      On April 17, 2025, CSHO Philip Pisasale of the OSHA Omaha Area Office, made initial visit to the Amentum workplace to conduct an inspection. CSHO Pisasale presented his credentials and conducted an opening conference with Brennan Vincent, a representative of Amentum. During the opening conference CSHO Pisasale detailed the nature of the complaints and expressed an intention to return to the workplace to measure potential employee exposure through personal sampling. CSHO Pisasale returned to the workplace on May 16, 2025 to conduct the personal sampling. Upon his arrival, Brock Heald, a representative of Amentum, did not permit CSHO Pisasale to sample Amentum employees.

10.     This application is submitted to request a warrant authorizing the inspection and investigation of the conditions set forth above in paragraph 6 and alleged in the complaints (see Ex. A), which relate to potential exposures to respirable crystalline silica – a health hazard. This inspection will involve the inspection procedures outlined in the NEP on Respirable Crystalline Silica (see Ex. C, CPL 03-00-023, para. XI.D.).

11.     Further, the inspection will include relevant records, files and papers, and any hazards observed in plain view. The inspection will be conducted during regular working hours or at other reasonable times, within reasonable limits, and in a reasonable manner, including access

to employees for voluntary questions in a private setting, and the taking of photographs, videotapes, environmental samples (including the use of personal sampling equipment), and measurements when necessary. The compliance officer's credentials will be presented, and the inspection will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

12.    Any information, including videotapes, photographs, and environmental samples, obtained in connection with the inspection and that is designated to be a trade secret, as defined in 18 U.S.C. § 1905, shall be considered confidential as provided in section 15 of the OSH Act, 29 U.S.C. § 664.

I declare under penalty of perjury that the foregoing is true and correct.

Scott Jacobson
Assistant Area Director
Omaha Area Office
Occupational Safety and Health Administration
United States Department of Labor

Subscribed and sworn to before me in my presence via telephone, or by other electronic means, on this 4th day of June, 2025.

RYAN C. CARSON
United States Magistrate Judge


LESLEY A. WOODS
United States Attorney
District of Nebraska


s/ Shereece Dendy-Sanders
SHEREECE DENDY-SANDERS, #24638
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 661-3081
Email: shereece.dendy-sanders@usdoj.gov


OF COUNSEL:

Jonathan L. Snare
Solicitor of Labor

Christine Z. Heri
Regional Solicitor

Evert H. Van Wijk
Associate Regional Solicitor

/s/ Megan J. McGinnis
Megan J. McGinnis
Senior Trial Attorney
KS Bar No. 24618

2300 Main Street, Suite 10100
Kansas City, MO 64108
(816) 285-7276
mcginnis.megan.j@dol.gov
*Attorneys for Secretary of Labor Lori Chavez-DeRemer*
*U.S. Department of Labor*

**EXHIBIT A**

# U.S. Department of Labor
Occupational Safety and Health Administration



## Notice of Alleged Safety or Health Hazards
**Print Date/Time:** April 14, 2025 8:35 AM

| Complaint Number | | 2281205 |
|---|---|---|
| Establishment Name / DBA | Turner Construction | |
| Site Address | 13396 Harlan Lewis RD<br><br>BELLEVUE, NE  68123 | |
| | Site Phone | (402) 709-3457 | Site FAX | |
| Mailing Address | 10810 Farman Drive<br><br>Omaha, NE  68154 | |
| Management Official | | Phone | |
| Type of Business | Construction | E-mail | |
| Ownership | Private Sector | Site Activity NAICS | 236115 - New Single-Family Housing Construction (except For-Sale Builders) |

**HAZARD DESCRIPTION/LOCATION.** Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

The Sub-Contractor Rolling Plains is responsible for the Fire Suppression Protection installation. The product they're using is Crystalline Silica which is mixed and sprayed on site. Rolling Plains initially had their mixers outside of the building and enclosed with plastic sheeting. Which helps controlled and minimize the exposure to the employees. The Rolling Plains employee loading the mixing hoper, however only had a N95 mask, he should have had a respirator. They started their installation on the ground floor of the construction site. This process is done in phases which requires multiple moves through the building. At the beginning of the fire suppression installation process, several employee had health concerns and question regarding safety procedures. Turner Construction the General Contractor attempted to appease and address the concerns with safety briefing with information on a study completed over six years. The study was done in a controlled environment and based on an eight hour working for exposure. The General also informed the employees that current site is within the safety range for exposure and the employees were also informed during this meeting that sub-contractors or the employees would have to provide their own masks or respirators, because they would not be supplying the proper safety equipment. The employees still have concerns and issues with exposure. Starting this week Rolling Plains moved forward with the installation, but another concern was raised, they brought in two portable mix hopers to the ground floor and one on the second floor. The protection distance and the plastic sheeting is now gone. The area where they are mixing and spraying the crystalline silica is only a few yards away from several sub-contract workers as many as 40 at a time are in the exposed area. They dump as many as three bags at a time in the hoper which creates a huge dust cloud. Which in turn gets on everything in the work area. The new concern was brought to the General Contractor's safety, which was met with anger and push back towards the employees with the concerns. Since the issue or concern was raised, I don't think any site exposure testing has been completed. I personally know of two employees who went to the hospital for nose bleeds, unknown if the exposure to the crystalline silica is the cause. I believe there is a big enough concern for OHSA to conduct an inquiry. - The Main Building Complex on the construction site.

**EXHIBIT A**

# U.S. Department of Labor

Occupational Safety and Health Administration



## Notice of Alleged Safety or Health Hazards

**Print Date/Time:** April 14, 2025 8:36 AM

| Complaint Number | | 2281486 | |
|---|---|---|---|
| Establishment Name / DBA | Turner Construction | | |
| Site Address | Offutt AFB - NKO Site<br><br>BELLEVUE, NE  68005 | | |
| | Site Phone | (402) 973-5848 | Site FAX |
| Mailing Address | 10810 Farman Drive Suite 201<br><br>Omaha, NE  68136 | | |
| Management Official | Zachariah Lucas | Phone | |
| Type of Business | Government | E-mail | |
| Ownership | Private Sector | Site Activity NAICS | 236115 - New Single-Family Housing Construction (except For-Sale Builders) |

**HAZARD DESCRIPTION/LOCATION.** Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Crystallized Silica is being mixed inside and sprayed along the construction sight. No ventilation. No respirators according to SDS. Heaters are circulating premixed silica all around the site. People are sneezing blood. - NKO site.

**EXHIBIT B**

Field Operations Manual (FOM)  /  Chapter 9

# Chapter 9

## COMPLAINT AND REFERRAL PROCESSING

I. **Safety and Health Complaints and Referrals**.

   A. **Definitions**.

      1. **Complaint**.

      Notice of an alleged safety or health hazard (over which OSHA has jurisdiction), or a violation of the Act. There are two types; formal and non-formal.

        a. **Formal Complaint**.

        Complaint made by a current employee or a representative of employees that meets all the following requirements:

          ▪ Asserts that an imminent danger, a violation of the Act, or a violation of an OSHA standard exposes employees to a potential physical or health harm in the workplace;

          ▪ Is reduced to writing or submitted on a Complaint (OSHA-7); and

          ▪ Is signed by at least one current employee or employee representative.

        b. **Non-formal Complaint**.

        Any complaint alleging a safety or health violation(s) that does not meet all the requirements of a formal complaint identified above and does not come from one of the sources identified under the definition of Referral, below.

      2. **Inspection**.

      An on-site examination of an employer's worksite conducted by an OSHA compliance officer, initiated as the result of a complaint or referral, and meeting at least one of the criteria identified in Section C, Criteria Warranting an Inspection, below.

      3. **Inquiry**.

      A process conducted in response to a complaint or a referral that does not meet one of the identified inspection criteria as listed in Section C. It does not involve an on-site inspection of the workplace but, rather, the employer is notified of the alleged hazard(s) or violation(s) by telephone, fax, email, or by letter, if necessary. The employer is then requested to provide a response, and OSHA will notify the complainant of that response through appropriate means.

      4. **Electronic Complaint**.

      A complaint submitted through OSHA's public website. All complaints submitted via OSHA's public website are initially considered non-formal.

      See Chapter 9 Section I.E.5, to determine when electronic complaints are to be considered formal.

      5. **Permanently Disabling Injury or Illness**.

      An injury or illness that has resulted in permanent disability, work-related injury, or an illness that is chronic or irreversible. Permanently disabling injuries or illnesses include, but are not limited to: amputation, blindness, a standard threshold shift in hearing, lead or mercury poisoning, paralysis or third-degree burns.

      6. **Referral**.

      An allegation of a potential workplace hazard or violation received from one of the sources listed below:

        a. CSHO referral – information based on the direct observation of a CSHO.

    b. Safety and health agency referral – from sources including, but not limited to: NIOSH, state programs, consultation, and state or local health departments, as well as safety and/or health professionals in other federal agencies.

    c. Discrimination or Whistleblower complaint referral – made by a whistleblower investigator when an employee alleges that he or she was retaliated against for complaining about safety or health conditions in the workplace, refusing to do an allegedly imminently dangerous task, engaging in other activities related to occupational safety or health or for raising concerns under any of the federal anti-retaliation statues that OSHA enforces. See the Whistleblower Statutes Desk Aid for more information.

    d. Other government agency referral – made by other federal, state, or local government agencies or their employees, including local police and fire departments.

    e. Media report – either news items reported in the media or information reported directly to OSHA by a media source.

    f. Employer/Employer Representative report – of accidents other than fatalities and catastrophes.

7. **Representative of Employees**.

Any of the following:

    a. An authorized representative of the employee bargaining unit, such as a certified or recognized labor organization.

    b. An attorney acting for an employee.

    c. Any other person acting in a bona fide representative capacity, including, but not limited to, members of the clergy, social workers, spouses and other family members, and government officials or nonprofit groups and organizations acting upon specific complaints and injuries from individuals who are employees.

NOTE: The representative capacity of the person filing complaints on behalf of another should be ascertained unless it is already clear. In general, the affected employee should have requested, or at least approved, the filing of the complaint on his or her behalf.

B. **Classifying as a Complaint or a Referral**.

Whether the information received is classified as a complaint or a referral, an inspection of a workplace is normally warranted if at least one of the conditions in Section C, Criteria Warranting an Inspection, is met.

C. **Criteria Warranting an Inspection**.

An inspection is normally warranted if at least one of the conditions below is met (but see also Section I.D, of this chapter, Scheduling an Inspection of an Employer in an Exempt Industry):

1. A valid formal complaint is submitted. Specifically, the complaint must be reduced to writing or submitted on a Complaint (OSHA-7 or OSHA Online Complaint Form), be signed by a current employee or representative of employees, and state the reason for the inspection request with reasonable particularity. Additionally, there must be reasonable grounds to believe either that a violation of the Act or OSHA standard that exposes employees to physical harm exists, or that an imminent danger of death or serious injury exists, as provided in Section 8(f)(1) of the Act.

2. The information received in a signed, written complaint from a current employee or employee representative that alleges a recordkeeping deficiency that indicates the existence of a potentially serious safety or health violation.

3. The information alleges that an imminent danger situation, a violation of the Act or of an OSHA standard exists, that exposes employees to a potential serious physical or health hazard in the workplace.

**EXHIBIT B**

4. The information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program (such as the Site-Specific Targeting Plan).

5. The employer fails to provide an adequate response to an inquiry, or the individual who provided the original information provides further evidence that the employer's response is false or does not adequately address the hazard(s). The evidence must be descriptive of current or recurring hazardous conditions.

6. The establishment that is the subject of the information has a history of egregious, willful, failure-to-abate, or repeated citations within the Area Office's jurisdiction during the past five years, or is an establishment or related establishment in the Severe Violator Enforcement Program. However, if the employer has previously submitted adequate documentation for these violations, demonstrating that they were corrected and that programs have been implemented to prevent a recurrence of hazards, then the Area Director will normally determine that an inspection is not necessary.

7. The Whistleblower Protection Program requests that an inspection be conducted in response to an employee's allegation that the employee was discriminated against for complaining about safety or health conditions in the workplace, refusing to perform an allegedly dangerous job or task, or engaging in other activities related to occupational safety or health.

8. If an inspection is scheduled or has begun at an establishment and a complaint or referral that would normally be handled through inquiry is received, then this complaint or referral can, at the Area Director's discretion, be incorporated into the scheduled or ongoing inspection. If such a complaint is formal, then the complainant must receive a written response that addresses the complaint items.

9. If the information gives reasonable grounds to believe that an employee under 18 years of age is exposed to a serious violation of a safety or health standard or a serious hazard, then an on-site inspection will be initiated if the information relates to construction, manufacturing, maritime, agriculture, or other industries as determined by the Area Director. Limitations placed on OSHA's activities in agriculture by Appropriations Act provisions will be observed. See CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act, May 28, 1998. A referral to Wage and Hour should also be initiated.
NOTE: The information does not need to allege that a child labor law has been violated.

D. **Scheduling an Inspection of an Employer in an Exempt Industry**.
In order to schedule an inspection of an employer in an exempt industry classification as specified by Appropriations Act provisions (See CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998), one of the following conditions must be met:

1. The information must come directly from a current employee; OR

2. It must be determined and documented in the case file that the information came from a representative of the employee (see Section I.A.7 of this chapter, Representative of Employees), with the employee's knowledge of the representative's intended action.

E. **Electronic Complaints Received through the OSHA Public Website**.

1. Electronic complaints submitted through the OSHA public website are automatically forwarded by email to a designated Area Office in the appropriate state. That office then forwards the electronic complaints to the appropriate Area Office in the state.

2. Each Area Office manages a "Complaints" mailbox and processes electronic complaints according to internal complaint processing procedures. The complaints mailbox is monitored daily and every incoming complaint is reviewed for jurisdiction.

   a. If the complaint falls within the jurisdiction of the Area Office, then the complaint is entered into OIS and processed as usual. b. If the complaint falls within the jurisdiction of another Area

**EXHIBIT B**

Office, the complaint is forwarded appropriately.

3. Area Offices will coordinate with State Plan states to establish procedures to process electronic complaints. The state establishes its own internal procedures for responding to such complaints. These procedures can be the state's usual procedures for handling unsigned complaints or they can include some further coordination with the complainant prior to action. In State Plan states, the Federal Monitoring Office will screen the complaints unless there is another arrangement. If the complaint falls within the individual State Plan's jurisdiction, then the Screening Office will follow the procedures developed with the State Plan for processing the complaint.

4. Complete a Complaint (OSHA-7) for all complaint information received. In order to facilitate the tracking of electronic complaints, please enter the electronic complaint number in the Receipt/Activity Info tab when applicable.

5. Electronic complaints where a current employee has provided their name and checked the "This constitutes my electronic signature" box shall be considered as a formal complaint and processed accordingly.

6. All complaint-related material received electronically should be printed and date-stamped with the date indicating when the material was submitted and received. When these dates are not the same, the Area Director will determine the appropriate date for the incoming material.

F. **Information Received by Telephone**.

1. While speaking with the caller, OSHA personnel will attempt to obtain the following information:
   a. Whether the caller is a current employee or an employee representative.
   b. The exact nature of the alleged hazard(s) and the basis of the caller's knowledge. The individual receiving the information must determine, to the extent possible, whether the information received describes an apparent violation of OSHA standards or the OSH Act.
   c. The employer's name, address, email address, telephone and fax numbers, as well as the name of a contact person at the worksite.
   d. The name, address, telephone number, and email address of any union and/or employee representative at the worksite.

2. As appropriate, OSHA will provide the caller with the following information:
   a. Describe the complaint process, and if appropriate, the concepts of "inquiry" and "inspection," as well as the relative advantages of each.
   b. If the caller is a current employee or a representative of employees, explain the distinction between a formal complaint and a non-formal complaint, and the rights and protections that accompany filing a formal complaint. These rights and protections include: . The right to request an on-site inspection.
      ▪ Notification in writing if an inspection is deemed unnecessary because there are no reasonable grounds to believe that a violation or danger exists.
      ▪ The right to obtain review of a decision not to inspect by submitting a request for review in writing.

3. Information received by telephone from a current employee is considered a non-formal complaint until that individual provides a signed copy of the information. The employee can mail, email, or fax a signed copy of the information, request that a Complaint (OSHA-7) be sent, or sign the information in person at the Area Office. Normally a complainant has five working days to formalize an electronic complaint.

4. If appropriate, inform the complainant of rights to confidentiality in accordance with Section 8(f)(1) of the Act for private sector employees, and Executive Order 12196 for federal employees, and ask whether the complainant wishes to exercise this right. When confidentiality is requested, the identity of the complainant is protected regardless of the formality of the complaint.

**EXHIBIT B**

5. Explain Section 11(c) rights to private sector employees and employees of the U.S. Postal Service, or reprisal and discrimination protection provided by Executive Order 12196, §1960.46 and the Whistleblowers Protection Act of 1989 to federal employees. See Chapter 13, Section III.E for reports of reprisal or discrimination from federal employees.

G. **Procedures for Handling Complaints Filed in Multiple Area Offices or Regions**.

1. When a Regional Office determines that multiple offices within the Region have received the same complaint or, if the Regional Office suspects that the same complaint has been filed in multiple Regions, the Regional Office should contact the Director or Deputy Director of the Directorate of Enforcement Programs (DEP).

2. DEP will query all 10 Regions and coordinate with the Directorate of Cooperative and State Programs to query the State Plan states to determine whether similar complaints were filed in multiple offices.

   a. If multiple Regions have received the same complaint, then the National Office will address the complaint with the employer.

   b. Area Offices should indicate in OIS that these complaints have been transferred to the National Office.

H. **Procedures for an Inspection**.

1. Upon receipt of a complaint or referral, the Area Director or designee will evaluate all available information to determine whether there are reasonable grounds to believe that a violation or hazard exists.

   a. If necessary, reasonable attempts will be made to contact the individual who provided the information in order to obtain additional details or to clarify issues raised in the complaint or referral. See the Complaint Questionnaire beginning on page 9-13.

   b. The Area Director can determine not to inspect a facility if he/she has a substantial reason to believe that the condition in the complaint is being or has been abated.

2. Despite the existence of a complaint, if the Area Director determines that there are no reasonable grounds to believe that a violation or hazard exists, then no inspection or inquiry will be conducted.

   a. Where a formal complaint has been submitted, the complainant will be notified in writing of OSHA's intent not to conduct an inspection, the reasoning behind the determination, and the right to have the determination reviewed under §1903.12. The justification for not inspecting will be noted in the case file.

   b. In the event of a non-formal complaint or referral, if possible, the individual providing the information will be notified by appropriate means of OSHA's intent not to conduct an inquiry or inspection. The justification for not inspecting or conducting an inquiry will be noted in the case file.

3. If the information contained in the complaint or referral meets at least one of the inspection criteria listed in Section I.C of this chapter, Criteria Warranting an Inspection, and there are reasonable grounds to believe that a violation or hazard exists, the Area Office is authorized to conduct an inspection.

   a. If appropriate, then the Area Office will inform the individual who has provided the information that an inspection will be scheduled and that he or she will be advised of the results.

   b. After the inspection, the Area Office will send the complainant a letter addressing each information item, with reference to the citation(s) or a sufficiently detailed explanation for why a citation was not issued.

4. If an inspection is warranted, it will be initiated as soon as resources permit. Inspections resulting from formal complaints of serious hazards will normally be initiated within five working days of formalizing.

**EXHIBIT B**

5. As a general rule, the scope of a complaint/referral inspection must bear an appropriate relationship to the alleged violative conditions. The CSHO must have probable cause to expand the inspection beyond the violations alleged in the complaint/referral. See Chapter 3, Section III, Inspection Scope, and Chapter 15, Section III, Obtaining Warrants, for more information.

I. **Procedures for an Inquiry**.

1. If the complaint or referral does not meet the criteria for initiating an onsite inspection, then an inquiry will be conducted. OSHA will promptly notify the employer about the complaint or referral and its allegation(s), and fax or email a confirming letter.

2. If a non-formal complaint is submitted by a current employee or a representative of employees that does not meet any of the inspection criteria, then the complainant can be given five working days to make the complaint formal.

   a. The complainant can come into the Area Office and sign the complaint, or mail, email, or fax a signed complaint letter to OSHA. A Complaint (OSHA-7) can also be mailed or faxed to the complainant, if appropriate.

   b. If the complaint is not made formal after five working days, after making a reasonable attempt to inform the complainant of the decision, OSHA will proceed with the inquiry process.

3. The employer will be advised of what information is needed to answer the inquiry and encouraged to respond by fax or email. See Chapter 13, Federal Agency Field Activities, for differing federal agency procedures. Employers are encouraged to do the following:

   a. Immediately investigate and determine whether the complaint or referral information is valid and make any necessary corrections or modifications.

   b. Advise the Area Director either in writing by email or fax within five working days of the results of the investigation into the alleged complaint or referral information. At the discretion of the Area Director and depending on the circumstances, the response time can be longer or shorter than five working days. Also, although the employer is requested to respond within the above time frame, the employer may not be able to complete abatement action during the above timeframe, the employer should be encouraged to do so.

   c. Provide the Area Director with supporting documentation of the findings, including any applicable measurements or monitoring results, and photographs and/or videos that the employer believes would be helpful, as well as a description of any corrective action that the employer has taken or is in the process of taking.

   d. Post a copy of the letter from OSHA where it is readily accessible for review by all employees.

   e. Return a copy of the signed Certificate of Posting to the Area Office.

   f. If there is a recognized employee union or safety and health committee in the facility, provide them with a copy of OSHA's letter and the employer's response.

4. As soon as possible after contacting the employer, a notification letter will be faxed to the employer, or mailed where no fax is available. Sample letters to complainants and employers are provided in OIS. Note that some of these letters are for private sector use and some are for federal agency use. If email is an acceptable means of responding, then this should be indicated in the notification letter and the proper email address should be provided.

5. If no employer response or an inadequate employer response is received after the allotted five working days, additional contact with the employer can be made before an inspection is scheduled. If the employer provides no response or an inadequate response, or if OSHA determines from other information that the condition has not been or is not being corrected, then an inspection will be scheduled.

6. The complainant will be advised of the employer's response, as well as the complainant's rights to dispute that response and, if the alleged hazard persists, of the right to request an inspection. When

EXHIBIT B

OSHA receives an adequate response from the employer and the complainant does not dispute or object to the response, an onsite inspection normally will not be conducted.

7. If the complainant is a current employee or a representative of employees and wishes to dispute the employer's response, the disagreement must be submitted in writing and signed, thereby making the complaint formal.

   a. If the employee disagreement takes the form of a written and signed formal complaint, then see Section I.H of this chapter, Procedures for an Inspection.

   b. If the employee disagreement does not take the form of a written and signed formal complaint, then some discretion is allowed in situations where the information does not justify an on-site inspection. In such situations, the complainant will be notified of OSHA's intent not to conduct an inspection and the reasoning behind the determination. This decision should be thoroughly documented in the case file.

8. If a signed complaint is received after the complaint inquiry process has begun, then the Area Director will determine whether the alleged hazard is likely to exist based on the employer's response and by contacting the complainant. The complainant will be informed that the inquiry has begun and that the complainant retains the right to request an on-site inspection if he/she disputes the results and believes that the hazard still exists.

9. The complaint must not be closed until OSHA verifies that the hazard has been abated.

10. The justification for not conducting an inquiry will be noted in the case file.

J. **Complainant Protection**.

   1. **Identity of the Complainant**.

      a. Upon request of the complainant, his or her identity will be withheld from the employer in accordance with Section 8(f)(1) of the Act. No information will be given to the employer that would allow the employer to identify the complainant.

      b. Generally, names and other personally identifiable information of employees will not be included in the warrant application. Where employees' names or other personally identifiable information appear in affidavits and other supporting documents attached to the warrant application, such information must be redacted. Where inclusion of the employee's name is necessary, Area Offices should consult with RSOL about filing the warrant application under seal.

   2. **Whistleblower Protection**.

      a. Section 11(c) of the Act provides protection for employees who believe that they have been the subject of an adverse employment action in retaliation for engaging in activities related to workplace safety or health. Any employee who believes that he or she has been discharged or otherwise retaliated against by any person as a result of engaging in such activities can file a whistleblower complaint. The complaint must be filed within thirty (30) days of the discharge or other retaliation.

      b. Complainants should always be advised of their Section 11(c) rights and protections upon initial contact with OSHA and whenever appropriate in subsequent communications.

   3. **Recording in OIS**.

      Information about complaint and referral inspections or inquiries must be recorded in OIS following the current instructions outlined in the FOM. Referrals reported by the employer will be recorded in OIS following the guidance provided in the Memorandum entitled, *Revised Interim Enforcement Procedures for Reporting Requirements under 29 C.F.R. 1904.39*, dated March 4, 2016, or unless superseded by future Agency-approved correspondence.

II. **Whistleblower Complaints**.

A. OSHA enforces the whistleblower or anti-retaliation provisions of the OSH Act and 21 other other federal statutes. These anti-retaliation statutes protect employees who report violations of various

**EXHIBIT B**

workplace safety and health, airline, commercial motor carrier, consumer product, environmental, financial reform, food safety, health insurance reform, motor vehicle safety, nuclear, pipeline, public transportation agency, railroad, maritime, and securities laws. The statutes generally prohibit employers from discharging or otherwise retaliating against their employees for exercising their rights under these statutes. In particular, under Section 11(c) of the OSH Act, these rights include filing an OSHA complaint, participating in an inspection or talking to an inspector, seeking access to employer exposure and injury records, reporting an injury, and raising a safety or health complaint with the employer. A desk reference summarizing these statutes can be found at www.whistleblowers.gov.

B. When a whistleblower complaint is made under any of the federal whistleblower statutes enforced by OSHA other than the OSH Act, the complainant should be referred promptly to the Assistant Regional Administrator for Whistleblower Protection Programs because the requirements for filing complaints under those statutes can vary from those of the OSH Act. They should also be advised that there are statutory deadlines for filing these complaints.

C. In the context of an OSHA enforcement action or a consultation activity, the complainant will be advised of the protection against retaliation afforded by Section 11(c) of the Act. A Section 11(c) complaint can be in any form, including an oral complaint made to a CSHO. Thus, if a person alleges that he or she has suffered an adverse action because of activity protected under Section 11(c), CSHOs will record that person's identifying information and the date and time of this initial contact on an OSHA-87 form and forward it to the Assistant Regional Administrator for Whistleblower Protection Programs for processing.

D. In State Plan states, employees can file occupational safety and health retaliation complaints with Federal OSHA, the state, or both. Federal OSHA normally refers such complaints to the State Plan states for investigation. OSHA's Whistleblower Manual outlines the Agency's referral/deferral policies for such complaints.

III. **Decision Trees**.

A. See tree on page 9-12 for OSHA enforcement action or consultation activity when information is obtained in writing.

B. See tree on page 9-14 for OSHA enforcement action or consultation activity when information is obtained orally.

**EXHIBIT C**



**U.S. DEPARTMENT OF LABOR**        **Occupational Safety and Health Administration**

| DIRECTIVE NUMBER: CPL 03-00-023 | EFFECTIVE DATE: 02/04/2020 |
|---|---|
| **SUBJECT:**    National Emphasis Program – Respirable Crystalline Silica | |

**\*\*NOTE:  Minor changes {in brackets} were made to this directive on June 29, 2020, after the issuance of OSHA Instruction, CPL 02-02-080, *Inspection Procedures for the Respirable Crystalline Silica Standards*, June 25, 2020.  These changes do not impact this National Emphasis Program's scope or policy.**

### ABSTRACT

**Purpose:**      This Instruction describes policies and procedures for implementing a National Emphasis Program (NEP) to identify and reduce or eliminate worker exposures to respirable crystalline silica (RCS) in general industry, maritime, and construction.  The NEP targets specific industries expected to have the highest exposures to RCS.

**Scope:**        This Instruction applies OSHA-wide.

**References:**   Federal Register, 81 FR 16285-16890, §§ 1910, 1915, 1926, *Occupational Exposure to Respirable Crystalline Silica; Final Rule*, March 25, 2016.

{OSHA Instruction CPL 02-02-080, *Inspection Procedures for the Respirable Crystalline Silica Standards*, June 25, 2020.}

OSHA Instruction CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995.

OSHA Instruction CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998 (including annually updated Appendix A).

{OSHA Instruction ~~CPL 02-00-163~~ CPL 02-00-164, *Field Operations Manual (FOM)*, ~~September 13, 2019~~ April 14, 2020}.

(See Section III for additional references.)

**Cancellations:**  {OSHA Notice CPL 03-00-007, *Cancellation of CPL 03-00-007, National Emphasis Program - Crystalline Silica*, October 26, 2017 ~~None~~}.

**State Plan Impact:**  This Instruction describes a federal program change for which State Plan adoption is required (see Section VI).

**EXHIBIT C**

| | |
|---|---|
| **Action Offices:** | OSHA Regional and Area Offices, State Plan and State Consultation Offices |
| **Originating Office:** | Directorate of Enforcement Programs, Office of Health Enforcement |
| **Contact:** | Directorate of Enforcement Programs<br>Office of Health Enforcement<br>200 Constitution Avenue, NW, Room N3119<br>Washington, DC 20210 |

By and Under the Authority of

LOREN SWEATT
Principal Deputy Assistant Secretary

**EXHIBIT C**

## Executive Summary

This Instruction describes policies and procedures for implementing a National Emphasis Program (NEP) to identify and reduce or eliminate worker exposures to respirable crystalline silica (RCS) in general industry, maritime, and construction industries. It targets specific industries expected to have the highest exposures to RCS and focuses on enforcement of the new RCS Standards, 29 CFR § 1910.1053 and 29 CFR § 1926.1153, which were published in the Federal Register, Vol. 81, No. 58, on March 25, 2016, and became effective on June 23, 2016.

## Significant Changes

This Instruction follows the cancellation of the 2008 Crystalline Silica NEP in October 2017. The following list highlights the differences between this replacement NEP and the former NEP:

- This replacement NEP addresses enforcement of OSHA's standards for RCS, promulgated in 2016. One standard covers general industry and maritime, and the other covers construction. Both standards set a permissible exposure limit (PEL) for RCS of 50 micrograms per cubic meter ($\mu g/m^3$) as an 8-hour time-weighted average (TWA). The former TWA PELs for respirable quartz silica were calculated based on silica content and were approximately equivalent to 100 $\mu g/m^3$ for general industry and 250 $\mu g/m^3$ for construction and shipyards (81 FR at 16294, March 25, 2016).

- This NEP contains an updated list of target industries, listed by North American Industry Classification System (NAICS) codes.

- For inspection procedures, this NEP refers compliance safety and health officers (CSHOs) to {the new OSHA Instruction, CPL 02-02-080, Inspection Procedures for the Respirable Crystalline Silica Standards, June 25, 2020 ~~current enforcement guidance for the Respirable Crystalline Silica Standards~~}.

- State Plan participation in this NEP has been made mandatory.

- Area and Regional Offices shall comply with this NEP, but they are not required to develop and implement corresponding Local Emphasis Programs (LEPs) or Regional Emphasis Programs (REPs).

- Area Offices will conduct outreach programs three months prior to initiating NEP-related RCS inspections.

- Area Offices are no longer required to send abatement verification to the National Office.

**EXHIBIT C**

## Table of Contents

I.      Purpose. ........................................................................................................................1

II.     Scope. ...........................................................................................................................1

IV.     Cancellations. ...............................................................................................................2

V.      Action Offices. .............................................................................................................3

    A.    Responsible Office. ...............................................................................................3

    B.    Action Offices. ......................................................................................................3

    C.    Information Offices. ...............................................................................................3

VI.     Federal Program Change. ..............................................................................................3

VII.    Significant Changes. ......................................................................................................3

VIII.   On-Site Consultation Programs. ....................................................................................4

IX.     Background. ...................................................................................................................4

X.      National Emphasis Program (NEP) Goal. .....................................................................7

XI.     Program Procedures. .....................................................................................................7

    A.    General. ..................................................................................................................7

    B.    Site Selection. ........................................................................................................7

    C.    Inspection Scheduling. ...........................................................................................9

    D.    Inspection Procedures. .........................................................................................11

    E.    CSHO Protection. ................................................................................................13

    F.    Follow-up Inspections. .........................................................................................13

    G.    OSHA Information System (OIS) Coding Instructions. ......................................14

    H.    Outreach. ..............................................................................................................14

    I.    Coordination. .......................................................................................................16

    J.    Program Review. ..................................................................................................16

Appendix A:  Target Industries for the RCS NEP

Appendix B:  Supplemental Industries for the RCS NEP

**EXHIBIT C**

I.    <u>Purpose</u>.

This Instruction establishes a new National Emphasis Program (NEP) for respirable crystalline silica (RCS).  It describes policies and procedures for implementing the NEP to identify and reduce or eliminate worker exposures to RCS in general industry, maritime, and construction industries.  It targets specific industries expected to have the highest exposures to RCS and focuses on enforcement of the two RCS standards, 29 CFR § 1910.1053 and 29 CFR § 1926.1153, published in the Federal Register, Vol. 81, No. 58, on Friday, March 25, 2016, which became effective on June 23, 2016.

II.    <u>Scope</u>.

This Instruction applies OSHA-wide.

III.    <u>References</u>.

A.    Federal Register, 81 FR 16285-16890, §§ 1910, 1915, 1926, *Occupational Exposure to Respirable Crystalline Silica; Final Rule*, March 25, 2016. https://www.gpo.gov/fdsys/pkg/FR-2016-03-25/pdf/2016-04800.pdf.

B.    OSHA Instruction ADM 04-00-002, *OSHA Safety and Health Management System*, October 5, 2016. https://www.osha.gov/enforcement/directives/adm-04-00-002.

C.    {OSHA Instruction CPL 02-02-080, *Inspection Procedures for the Respirable Crystalline Silica Standards*, June 25, 2020. https://www.osha.gov/enforcement/directives/cpl-02-02-080.}

D.    OSHA Instruction CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995. https://www.osha.gov/enforcement/directives/cpl-02-00-025.

E.    OSHA Instruction CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998 (including annually updated Appendix A). https://www.osha.gov/enforcement/directives/cpl-02-00-051.

F.    OSHA Instruction CPL 02-02-072, *Rules of Agency Practice and Procedure Concerning OSHA Access to Employee Medical Records*, August 22, 2007. https://www.osha.gov/enforcement/directives/cpl-02-02-072.

G.    OSHA Instruction CPL 02-00-155, *Inspection Scheduling for Construction*, September 6, 2013. https://www.osha.gov/enforcement/directives/cpl-02-00-155.

H.    {OSHA Instruction ~~CPL 02-00-163~~ CPL 02-00-164, *Field Operations Manual (FOM)*, ~~September 13, 2019~~ April 14, 2020. https://www.osha.gov/enforcement/directives/cpl-02-00-~~163~~164}.

I.    OSHA Instruction CSP 03-02-003, *OSHA Strategic Partnership Program for Worker Safety and Health*, November 6, 2013. https://www.osha.gov/enforcement/directives/csp-03-02-003.

1

**EXHIBIT C**

J.  OSHA Instruction CPL 04-00-002, *Procedures for the Approval of Local Emphasis Programs (LEPs)*, November 13, 2018. https://www.osha.gov/enforcement/directives/cpl-04-00-002.

K.  OSHA Memorandum on Establishment-Targeting Lists for Emphasis Programs, November 12, 2014. https://www.osha.gov/dep/enforcement/establishment_targeting_lists_11122014.html.

L.  OSHA Memorandum on Procedures for Local and Regional Emphasis Programs, December 3, 2014. https://www.osha.gov/dep/enforcement/procedures_for_emphasis_12032014.html.

M.  OSHA/NIOSH Hazard Alert, *Worker Exposure to Silica during Hydraulic Fracturing*, June 2012. https://www.osha.gov/dts/hazardalerts/hydraulic_frac_hazard_alert.html. [*Note, some information in this document does not reflect OSHA's respirable crystalline silica rule published on March 25, 2016.*]

N.  OSHA/NIOSH Hazard Alert, *Worker Exposure to Silica during Countertop Manufacturing, Finishing and Installation*, February 2015. https://www.osha.gov/dts/hazardalerts/silica_hazard_alert.html. [*Note, some information in this document does not reflect OSHA's respirable crystalline silica rule published on March 25, 2016.*]

{O.  ~~OSHA Notice CPL 03-00-007, *Cancellation of CPL 03-00-007, National Emphasis Program – Crystalline Silica*, October 26, 2017. https://www.osha.gov/enforcement/directives/cpl-03-00-007-0.~~}

O.  OSHA Safety and Health Topics: Oil and Gas Extraction (webpage). https://www.osha.gov/SLTC/oilgaswelldrilling/.

P.  OSHA Safety and Health Topics: Silica, Crystalline (webpage). https://www.osha.gov/dsg/topics/silicacrystalline/.

Q.  OSHA Notice 18-01 (CPL 02), *Site-Specific Targeting 2016 (SST-16)*, October 16, 2018 (or subsequent version). https://www.osha.gov/enforcement/directives/18-01-cpl-02.

R.  OSHA Instruction ADM 03-01-005, *OSHA Compliance Records*, August 3, 1998. https://www.osha.gov/enforcement/directives/adm-03-01-005.

S.  OSHA Instruction CPL 02-02-054, *Respiratory Protection Program Guidelines*, July 14, 2000. https://www.osha.gov/enforcement/directives/cpl-02-02-054.

T.  Centers for Disease Control and Prevention (CDC), "Silicosis Mortality Trends and New Exposures to Respirable Crystalline Silica - United States, 2001–2010." *Morbidity and Mortality Weekly Report: MMWR*, February 13, 2015 / 64(05);117-120. https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6405a1.htm.

IV.  <u>Cancellations</u>.

2

**EXHIBIT C**

{OSHA Notice CPL 03-00-007, *Cancellation of CPL 03-00-007, National Emphasis Program - Crystalline Silica*, October 26, 2017 ~~None~~}.

V.     Action Offices.

    A.     Responsible Office.

        Directorate of Enforcement Programs, Office of Health Enforcement

    B.     Action Offices.

        OSHA Regional and Area Offices, State Plan and State Consultation Offices

    C.     Information Offices.

        OSHA National Office

VI.     Federal Program Change.

This Instruction describes a federal program change that establishes an NEP to identify and reduce or eliminate overexposures to RCS. Because of the seriousness of the hazards associated with exposure to RCS and the prevalence of such exposures nationwide, State Plans are required to participate in this NEP.

State Plans are required to notify OSHA within 60 days whether the State Plan's emphasis program will be identical to or different from the federal program. If a State Plan is already implementing an emphasis program in this area, or if it adopts an initiative in response to this federal program change, its implementing policies and procedures are expected to be at least as effective as those in this Instruction.

If a State Plan adopts or maintains an emphasis program on RCS that differs from the federal program, then the State Plan shall identify the differences and shall either post its different procedures on its State Plan website and provide a link to OSHA, or provide an electronic copy to OSHA with information on how the public may obtain a copy. State Plan adoption, either identical or different, shall be accomplished within 6 months. Documentation of State Plan adoption, and the date of adoption, shall be submitted to OSHA within 60 days of adoption. OSHA will provide summary information on the State Plan responses to this Instruction on OSHA's website (www.osha.gov).

OSHA's Office of Statistical Analysis (OSA) will work with the State Plans to provide the data necessary to develop targeting lists in accordance with the instructions in Section XI. OSHA will make the list(s) of establishments available to the State Plans. See coding instructions for the OSHA Information System (OIS) in Section XI.G.

This Instruction describes a change that may affect federal agencies. Federal agencies that are subject to inspection and have employees exposed to hazards covered by this emphasis program are also included in this NEP. *See* FOM Chapter 13, *Federal Agency Field Activities*.

VII.     Significant Changes.

This Instruction follows the cancellation of the 2008 Crystalline Silica NEP in October 2017. The following list highlights the differences between this replacement NEP and the former NEP:

**EXHIBIT C**

A.   This replacement NEP addresses enforcement of OSHA's standards for RCS, promulgated in 2016.  One standard covers general industry and maritime, and the other covers construction.  Both standards set a permissible exposure limit (PEL) for RCS of 50 micrograms per cubic meter ($\mu g/m^3$) as an 8-hour time-weighted average (TWA).  The former TWA PELs for respirable quartz silica were calculated based on silica content and were approximately equivalent to 100 $\mu g/m^3$ for general industry and 250 $\mu g/m^3$ for construction and shipyards (81 FR at 16294, March 25, 2016).

B.   This NEP contains an updated list of target industries, listed by North American Industry Classification System (NAICS) codes.

C.   For inspection procedures, this NEP refers compliance safety and health officers (CSHOs) to {the new OSHA Instruction, CPL 02-02-080, Inspection Procedures for the Respirable Crystalline Silica Standards, June 25, 2020 ~~current enforcement guidance for the Respirable Crystalline Silica Standards~~}.

D.   State Plan participation in this NEP has been made mandatory.

E.   Area and Regional Offices shall comply with this NEP, but they are not required to develop and implement corresponding Local Emphasis Programs (LEPs) or Regional Emphasis Programs (REPs).

F.   Area Offices will conduct outreach programs three months prior to initiating NEP-related RCS inspections.

G.   Area Offices are no longer required to send abatement verification to the National Office.

VIII.   <u>On-Site Consultation Programs</u>.

On-Site Consultation Programs are encouraged to develop their own strategic approaches for addressing the hazards associated with occupational exposure to crystalline silica. See coding instructions for the OIS in Section XI.G.

IX.   <u>Background</u>.

A.   Crystalline silica is a common mineral found in many naturally occurring materials and used in many industrial products and at construction sites. Materials including sand, concrete, stone, and mortar contain crystalline silica.

RCS consists of very small silica particles, typically at least 100 times smaller than ordinary sand found on beaches or playgrounds.  RCS is generated by high-energy operations like cutting, sawing, grinding, drilling and crushing stone, rock, concrete, brick, block, and mortar; and when abrasive blasting with sand. Exposure to RCS can also occur during manufacture of products such as glass, pottery, ceramics, bricks, concrete, countertops, and artificial stone.  In particular, silica exposure during the fabrication of artificial stone countertops is an emerging hazard that has been associated with several recent outbreaks of severe accelerated silicosis in young workers in the U.S.  Additionally, fine industrial sand used in industry can also be a source of RCS exposure, such as in certain

4

EXHIBIT C

foundry operations and, increasingly in recent years, during hydraulic fracturing (fracking).

Inhalation of elevated levels of RCS particles poses a health hazard and can cause multiple diseases, including silicosis, an incurable lung disease that can lead to disability and death. Exposure to RCS can also cause lung cancer, chronic obstructive pulmonary disease (COPD), and kidney disease. Simply being near sand or other silica-containing materials is not hazardous. The hazard is created when specific activities generate respirable dust that is released into the air. *See* 81 FR at 16386-87, Table VI-1.

B.     Addressing the workplace incidence of silicosis has been a primary goal of the Agency since its inception. OSHA first adopted permissible exposure limits (PELs) for workplace exposure to RCS in 1971: for general industry, see 29 CFR § 1910.1000, Table Z–3; for shipyards, see 29 CFR § 1915.1000, Table Z; and, for construction, see 29 CFR § 1926.55, Appendix A. The initial PELs for respirable quartz silica were approximately equivalent to 100 micrograms per cubic meter ($\mu g/m^3$) as an 8-hour time-weighted average (TWA) for general industry and 250 $\mu g/m^3$ for construction and shipyards. *See* 81 FR at 16294.

In 1972, OSHA issued guidelines for conducting inspections in workplaces with significant crystalline silica exposure. In the early 1980s, the Agency placed special emphasis on the prevention of silicosis in foundry personnel. In 1996, OSHA implemented a Special Emphasis Program (SEP) to step up enforcement of the crystalline silica PELs. The SEP included extensive outreach designed to educate and train employers and employees about the hazards of silica and how to control them, and called for inspections to enforce the PELs.

In 2003, OSHA examined enforcement data for the years 1997 to 2002 and identified high rates of noncompliance with the RCS PELs, particularly in construction. This period covered the first five years of the SEP. The data indicated that just 66 percent of the silica samples obtained during inspections in general industry were in compliance with the applicable PEL, while only 58 percent of the samples collected in construction were in compliance. *See* 81 FR at 16295-16296.

In an effort to expand the 1996 SEP, on January 24, 2008, OSHA implemented an NEP to identify and reduce or eliminate the health hazards associated with occupational exposure to crystalline silica (CPL 03-00-007). The 2008 Silica NEP targeted construction and general industry worksites with potential overexposures to crystalline silica. The NEP instructed OSHA regions to ensure that at least 2 percent of their total inspections each year (or approximately 600 to 700 federal OSHA inspections annually, nationwide) addressed silica.

An analysis of OSHA enforcement data from January 2003 to December 2009 (covering a period of continued implementation of the SEP and the first two years of the NEP) again showed considerable noncompliance with the PELs. The data indicated that 30 percent of the silica samples obtained during inspections in general industry, and 25 percent of the samples collected in construction, were

**EXHIBIT C**

above the applicable PEL (i.e., OSHA found just 70 percent compliance in general industry and 75 percent in construction). *See* 81 FR at 16296.

C.   In 2016, OSHA issued two new standards for RCS – one for general industry and maritime (29 CFR § 1910.1053) and one for construction (29 CFR § 1926.1153). The 2016 standards established a new action level of 25 µg/m³, and a new PEL of 50 µg/m³, both calculated as 8-hour TWAs. The standards also require employers to take other steps to protect workers from silica hazards.  In promulgating the new standards, OSHA estimated the number of U.S. workers currently at risk from silica exposure to be over two million.  Approximately 1,249,250 workers (1,097,000 in construction; 152,300 in general industry and maritime) were estimated to have silica exposures at or above the new action level of 25 µg/m³; and an estimated 948,100 workers (847,700 in construction; and 100,400 in general industry and maritime) had silica exposures above the new PEL of 50 µg/m³.  *See* 81 FR at 16419.  It is important to note that compliance with the new PEL is not expected to completely eliminate the risks associated with occupational exposure to RCS.  Significant risks of mortality and morbidity still exist for workers exposed to RCS at the new PEL over a 45-year working life. *See* 81 FR at 16386-87.

The 2008 Silica NEP was cancelled in 2017 (OSHA Notice CPL 03-00-007, *Cancellation of CPL 03-00-007, National Emphasis Program - Crystalline Silica*, October 26, 2017).  The Agency explained that because it had issued new silica standards, the previous NEP was no longer applicable.  OSHA further stated it would determine at a later date if a revised NEP for RCS, under the new standards, was warranted.  The 2018-2022 DOL Strategic Plan does not specifically address silica, but it does state that OSHA continues to target high-risk industries for inspection and enforcement activity, and it assigns safety and health priorities through regional and national emphasis programs.

D.   An April 2019 analysis conducted by OSHA reviewed all of the chemical air samples collected by the Agency between 2008 and 2017 (including 13,324 air samples for silica) and found that 14.1 percent of personal air samples for silica exceeded the applicable PEL, whereas only 2.5 percent of all chemical samples overall exceeded the relevant PEL.  Furthermore, over the first year after OSHA began enforcing the new PEL for silica (October 27, 2017, through September 30, 2018), the Agency's air sampling data shows that 133 of 754, or 17.6 percent, of silica samples exceeded the new PEL, whereas only 578 of 19,604, or 2.9 percent, of all chemical samples exceeded the relevant PEL.  Data reported on by the Centers for Disease Control and Prevention also demonstrate that hazardous silica exposures are continuing to occur in industry, e.g., during hydraulic fracturing of gas and oil wells and among workers who fabricate and install engineered stone countertops (CDC 2015).

Because occupational exposures to silica continue to pose a significant risk to a large population of workers, and because OSHA's sampling data continue to show a high rate of noncompliance (i.e., employee overexposures), OSHA has

**EXHIBIT C**

determined that this NEP is warranted. This NEP will aid OSHA's efforts to address workplace exposures to RCS in accordance with the 2016 standards.

X.    <u>National Emphasis Program (NEP) Goal</u>.

The goal of this NEP is to significantly reduce or eliminate worker exposures to RCS and, therefore, control the health hazards associated with such exposures. This goal will be accomplished by a combination of inspection targeting, outreach to employers, and compliance assistance. Inspections will be targeted toward industries and worksites expected to perform tasks associated with RCS overexposures.

In each Region, at least 2 percent of inspections every year shall target RCS. Silica-related inspections should be conducted at a range of facilities that reasonably represent the distribution of general industry, maritime, and construction worksites in that region. OSHA anticipates that the majority of the inspections will occur in construction because most exposures to RCS occur on construction worksites.

To ensure abatement and measure the effectiveness of this NEP, follow-up site visits may be necessary, as outlined in <u>Section XI.F</u>, below.

XI.    <u>Program Procedures</u>.

A.    <u>General</u>.

Area Offices or Regional Offices are not required to develop a Local Emphasis Program (LEP) or Regional Emphasis Program (REP) for RCS; but if they do, they shall follow the procedures within this NEP and shall focus their LEP/REP on the industries identified in Appendix A that are operating within their jurisdiction. They may also modify any existing LEPs/REPs that already cover one or more of the targeted industries so as to address potential RCS overexposures. *See* <u>CPL 04-00-002</u>, *Procedures for the Approval of Local Emphasis Programs (LEPs)*.

Appendices A and B of this Instruction provide lists of affected industries by their North American Industry Classification System (2017 NAICS) codes. The lists in Appendix A include industries where workers are currently at risk of RCS exposure above 100 μg/m³ as an 8-hour TWA. See Appendices A and B for more detailed information about the sources OSHA used to identify affected industries.

Establishments with fewer than 10 workers shall be included in this NEP. *See* <u>CPL 02-00-051</u>, *Enforcement Exemptions and Limitations under the Appropriations Act*.

B.    <u>Site Selection</u>.

1.    <u>Master List Generation</u>.

For programmed inspections, Appendix A provides lists of NAICS codes in general industry, maritime, and construction that have the largest numbers of workers expected to perform tasks associated with RCS overexposures.

**EXHIBIT C**

Table 1 in Appendix A includes the NAICS codes for general industry and maritime that Area Offices are to use in the Establishment Targeting List– Generation System (ListGen) for generating a master list of establishments.  Refer to the OSHA Memorandum, Establishment-Targeting Lists for Emphasis Programs, November 12, 2014.

Table 2 in Appendix A lists affected construction industry codes.  Area Offices shall develop establishment lists for these industries by using the OSHA Construction Inspection Targeting Application (C-target), compliance safety and health officers' (CSHOs) observations of area construction sites (i.e., knowledge gathered by CSHO "drive-bys"), and local knowledge (e.g., lists of highway, road, and bridge projects from the local department of transportation).  Refer to CPL 02-00-155, *Inspection Scheduling for Construction*.  Also, accompanying Table 2 in Appendix A is a list of construction operations likely to have RCS exposures, provided as an aid for compliance officers.

Appendix B contains a supplemental table of NAICS codes from general industry where there are smaller numbers of workers expected to perform tasks associated with RCS overexposures.  Appendix B should be used by Area Offices in their master list generation only if their jurisdiction generates an insufficient number of establishments from Appendix A, or where local knowledge and data supports adding the industry to a targeting list.

See Appendices A and B for additional information about how the various lists of NAICS codes are organized.

2.    Additions.

Area Offices may add establishments to the generated master list based on information from appropriate sources (e.g., local knowledge of establishments, commercial directories, referrals from the local health department, or previous OSHA inspection history).

3.    Deletions.

Area Offices shall delete from their target list for a current inspection cycle any facilities that they know are not likely to have RCS hazards or are no longer conducting business.  Area Offices also shall delete any establishment that has had a comprehensive or focused health inspection that addressed RCS hazards within the three (3) previous fiscal years (after this NEP has been in effect for three years) and resulted in one of the following outcomes:

a.    No serious citations were issued for violations of the applicable silica standard.

b.    Serious citation(s) were issued for violations of the applicable silica standard but either:

8

**EXHIBIT C**

- A follow-up inspection documented appropriate and effective efforts by the employer to abate the serious silica hazards cited (e.g., air sampling conducted, engineering controls installed); or,

- OSHA received abatement verification from the employer for all cited serious silica violations.

Area Offices shall maintain documentation supporting any deletions made under this paragraph (*see* Section XI.B.5).

4.    Cycle Generation.

Each establishment on the Area Office's master list will be assigned a sequential number.  Acceptable methods for generating and randomizing the inspection targeting list can be found in the memorandum dated November 12, 2014, Establishment-Targeting Lists for Emphasis Programs. Subsequent cycles will be created in the same manner until such time that this NEP is cancelled or until all establishments on the list have been assigned to a cycle.  Cycles may be created all at once or as necessary, and need not be of the same size.

NOTE:  Any establishment additions shall be added to the bottom of the master list in alphabetical order, assigned a sequential number, and randomized using established procedures.

5.    Maintaining Inspection List/Cycles and Documentation.

The Area Director is responsible for maintaining documentation necessary to demonstrate that the Area Office has used the NEP inspection list and cycles in accordance with this Instruction, including documenting all deletions, deferrals, or other modifications.  The Area Office shall maintain all such inspection lists, cycles, and documentation for a period of three years after all inspections conducted under this NEP plan are closed.  *See* CPL 02-00-025, *Scheduling System for Programmed Inspections*; CPL 02-00-155, *Inspection Scheduling for Construction*; and ADM 03-01-005, *OSHA Compliance Records*.

C.    Inspection Scheduling.

Within a specified cycle, inspections may be scheduled in any order that promotes efficient use of resources.  An inspection cycle shall be completed before another cycle is started, except that establishments may be carried over in accordance with established procedures.

Some establishments selected for inspection under this NEP may also be selected under other NEPs and/or LEPs.  Some of the other NEPs that may apply to worksites targeted by this NEP include the NEPs for Amputations, Combustible Dust, Primary Metal Industries, and Lead.  Whenever possible, inspections under this NEP should be carried out concurrently with other programmed inspections.

1.    Complaints and Referrals.

9

**EXHIBIT C**

Complaint(s) or referral(s) for any general industry, maritime, or construction operation alleging potential exposures to RCS, whether or not they fall within a targeted industry of this NEP, shall be handled in accordance with the general procedures in FOM Chapter 9, *Complaint and Referral Processing*, and in accordance with the specific procedures listed below:

a.   Complaints and referrals alleging potential worker exposures to RCS or involving workers with symptoms of exposure to RCS (e.g., dry chronic cough, sputum production, shortness of breath, and reduced pulmonary function) shall be treated as having priority and a health inspection shall be conducted.

b.   Document the status and condition of the work operation as far as they are known, noting any potentially serious hazard(s). Where possible, this should include process information (such as the type of process or conditions of exposure) that is indicative of the likelihood of exposure to RCS. Documentation of the events leading up to the observation shall be maintained in the file.

c.   Note the location of the workplace and the name and address of the employer(s) performing the operation.

d.   Whistleblower Protections. Workers requesting inspections, complaining of silica exposure, or reporting injuries or illnesses may be covered under one or more whistleblower statutes. Inform them of their protections from retaliation and refer them to https://www.whistleblowers.gov/ for more information.

2.   Cooperative Programs.

Employers participating in cooperative programs may be exempt from programmed inspections. After inspection lists are generated, the Area Office should contact the Cooperative and State Programs Unit in their Regional Office to determine if any company on the list should be exempted. The CSHO should follow the procedures outlined in FOM Chapter 2, Program Planning, for further guidance if an on-site consultation visit is in progress, or if the establishment is a participant in OSHA's Voluntary Protection Programs (VPP) or the Safety and Health Achievement Recognition Program (SHARP) or Pre-SHARP. Even if an employer is exempt from a programmed inspection, the Area Office should notify the employer in writing that they are required to comply with the RCS standard. In such cases, the Regional Consultation Project Officer shall follow-up with the responsible Consultation Program Manager.

3.   Strategic Partnerships.

Inspections initiated at establishments currently engaged in strategic partnerships with OSHA shall be conducted in accordance with the terms

**EXHIBIT C**

outlined in the partnership agreement. *See* CSP 03-02-003, *OSHA Strategic Partnership Program for Worker Safety and Health*. Establishments engaged in construction industry partnerships may qualify for a focused (or limited scope) inspection. Establishments engaged in a national partnership at non-construction worksites may also qualify for a focused (or limited scope) inspection with the approval of OSHA's Assistant Secretary (*see* CSP 03-02-003, Section XIV.C, *Programmed Inspection with a Limited Scope. Non-Construction*, and Section XIV.D, *Programmed Inspection with a Limited Scope. Construction*).

4.    Site-Specific Targeting (SST).

If an establishment selected for inspection under this NEP is also selected under the current SST plan, then, whenever possible, NEP and SST plan inspections should be conducted concurrently. Refer to OSHA Notice 18-01 (CPL 02), *Site-Specific Targeting 2016 (SST-16)* (or subsequent version).

5.    Interim Period.

The new silica standards provided delayed compliance dates to allow employers to become familiar with the standards, to plan their course of action for compliance, and to implement, design, and install applicable engineering controls and work practices. As of the effective date of this NEP:

a.    Construction employers shall comply with all requirements of the standard;

b.    General industry and maritime employers:

- Shall comply with all requirements of the standard, except as outlined below.

- The requirement to make medical surveillance available to each employee who is exposed at or above the action level for 30 or more days per year does not begin until June 23, 2020 (until then, medical surveillance shall be made available to employees exposed above the PEL for 30 or more days per year).

- For hydraulic fracturing operations in the oil and gas industry, the obligations for engineering controls in paragraph (f)(1) of the general industry standard commence on June 23, 2021.

D.    Inspection Procedures.

Inspections shall not be initiated under this NEP until the required outreach is conducted, per Section XI.H. However, during the outreach period, OSHA shall continue to respond to complaints, referrals, hospitalizations, and fatalities related to silica, and shall code such activities in accordance with Section XI.G. All inspections shall be conducted in accordance with the general provisions of the FOM and the {specific inspection procedures in the Silica Compliance Directive,

11

**EXHIBIT C**

CPL 02-02-080, Section IX, *Inspection Procedures* ~~current inspection guidance for the silica standards~~}.  Other general procedures related to preparing for inspections include:

1.    Once an inspection has been scheduled for an identified establishment, and prior to opening the inspection, the employer's citation and fatality/ accident history will be searched at the OSHA Establishment Search Page. Inspections under this NEP are to be conducted by a CSHO who has received appropriate training.  This training shall be accomplished at the local level and cover the hazards of RCS, the contents of this Instruction, and {requirements outlined in the Silica Compliance Directive ~~current enforcement guidance~~}, including other appropriate silica-related training (e.g., OTI training).  FOM Chapter 3, *Inspection Procedures*, provides details on inspection planning for CSHOs.

2.    The CSHO shall also determine whether the identified establishment is scheduled for any other programmed inspection (e.g., NEP, LEP).

3.    At the opening conference, the CSHO will verify the correct NAICS code for the establishment with the employer.  The CSHO shall also verify with the employer whether processes that may produce worker exposures to RCS are conducted at the facility or worksite.  If it is determined that no such processes are present, then the CSHO shall exit the premises without conducting an inspection.  However, if the establishment is targeted under another NEP or LEP, then the CSHO shall proceed with an inspection under the other program.

    If any processes are present that may result in worker exposures to RCS, then the CSHO shall proceed with the inspection following the procedures in this NEP and {the Silica Compliance Directive ~~current enforcement guidance for the silica standards~~}.

4.    Inspections conducted under this NEP for RCS might include personal exposure monitoring.  CSHOs should conduct air sampling, in accordance with the OSHA Technical Manual (OTM), Section II, Chapter 1, and OSHA sampling method ID-142.  Conduct sampling, as necessary, even if it is for less than an 8-hour period, per {~~current~~ inspection guidelines in the Silica Compliance Directive, CPL 02-02-080, Section IX.D, *Exposure Assessment*}.  CSHOs assigned to inspections under this NEP shall take with them appropriate calibrated instruments, pre-weighed filters, and other equipment in case such monitoring is necessary.  CSHOs should refer to {"Appendix B: Instructions for Air Samples" in the Silica Compliance Directive ~~current inspection guidance for the silica standards~~}, if exposure monitoring is conducted.

5.    All potential hazards observed in the course of any inspection conducted under this NEP shall be appropriately addressed.  Other health hazards that may be observed include:  exposure to elevated noise levels from cutting,

12

drilling, or blasting operations; heat stress; and exposure to beryllium dust during abrasive blasting.

If the compliance officer observes serious safety violations that cannot be immediately mitigated by the employer, then an appropriate referral may be made, subject to any current exemptions or limitations on such activity. Several targeted industries for the RCS NEP listed in Appendices A and B were on the annual appropriations exemption list issued January 2020 for Appendix A of CPL 02-00-051, such as, NAICS 213112 - Support Activities for Oil and Gas Operations, NAICS 2211 - Electric Power Generation, Transmission and Distribution, NAICS 2362 - Nonresidential Building Construction, NAICS 2379 - Other Heavy and Civil Engineering Construction, and many others.  *See* CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, Section XI.B.4.b, which provides: "Apparent safety violations noted during a health inspection of an establishment [with 10 or fewer employees] exempted from programmed safety inspections shall not be cited or referred for later inspection unless such violations create an imminent danger."

6.    The CSHO will inform workers of their right to file a whistleblower complaint if they experience retaliation for providing assistance to OSHA during an inspection, filing a safety and health complaint with OSHA, reporting a work-related injury or illness, or complaining about silica exposure or other workplace hazards to management.

E.    CSHO Protection.

1.    CSHOs shall protect themselves against all hazards during an inspection. *See* FOM Chapter 3, Section II.C, *Safety and Health Issues Relating to CSHOs*.  *See also* ADM 04-00-002, *OSHA Safety and Health Management System*.

2.    CSHOs shall wear appropriate respiratory protection inside an RCS-regulated area or other area where exposures are likely to exceed the PEL, such as may be the case during a task listed on Table 1 of the construction standard where required controls have not been fully and properly implemented.

3.    Respirators shall be selected in accordance with the respirator selection procedures in CPL 02-02-054, *Respiratory Protection Program Guidelines*.

F.    Follow-up Inspections.

If an employer covered by the general industry/maritime standard has not reduced RCS exposures to or below the PEL, or if an employer covered by the construction standard has not either fully and properly implemented required engineering controls, work practices, and respiratory protection for a task listed on Table 1 of that standard or reduced RCS exposures to or below the PEL, within

13

**EXHIBIT C**

the time period specified on the citation, then a follow-up inspection shall be conducted in accordance with FOM, Chapter 3, Section IX.A, *Follow-up and Monitoring Inspections*, based on available resources. Follow-up inspections should also be conducted if there are any unabated violations of other provisions of the standard. {Also, refer to the Silica Compliance Directive, CPL 02-02-080.}

For situations where follow-ups cannot be performed (e.g., some construction sites, fracking operations, or temporary abrasive blasting operations), the Area Office should, when possible, require the employer to provide written updates documenting the progress of abatement efforts, per 29 CFR § 1903.19. Note that the Area Office does not need to send abatement verification to the Directorate of Enforcement Programs (DEP) in the National Office, but the documentation needs to be available to DEP on request.

A follow-up inspection is not required when the Area Office has specific knowledge and documentation indicating that there are no workers exposed to RCS.

G.    OSHA Information System (OIS) Coding Instructions.

All enforcement activities (inspections, complaints, and referrals) and compliance assistance interventions conducted under this NEP shall be coded as "RCS-NEP" under the National Emphasis Program field in the OIS. Area Offices with their own LEP/REP shall also use the NEP code "RCS-NEP" in addition to their regional code.

On the OIS Inspection Type tab/page, for all programmed inspections under this NEP, code "RCS-NEP" as the Primary Emphasis Program that initiated the inspection. Additionally, the majority of inspections conducted under this NEP are to be coded under Inspection Category as a "Health" inspection.

Whenever a consultation request/visit is made related to this NEP, the NEP code "RCS-NEP" shall be recorded in the appropriate field on the Consultation request/visit forms.

NOTE: As of the effective date of this Instruction, silica inspections shall no longer be coded under the OIS field by using the Additional Code "N-02 SILICA."

H.    Outreach.

1.    Offices.

At least three months prior to initiating inspections from the generated NEP list, each Area Office shall conduct outreach programs concerning this RCS NEP, in accordance with OSHA Memorandum on Procedures for Local and Regional Emphasis Programs, December 3, 2014.

2.    Suggested Outreach.

Products and activities may include the following:

14

**EXHIBIT C**

a.  Letters and news releases announcing implementation of the updated Silica NEP.  Include information about no-cost On-Site Consultation services available to small businesses.

b.  Seminars on silica-related topics, tailored for specific audiences, such as employers, employee groups, local trade unions, apprentice programs (e.g., masons, bricklayers, railroad employees), and equipment manufacturers.  Local occupational medical staff can be invited to participate.

c.  Working with existing partnerships and alliances, including disseminating information on the NEP and silica standard, and sharing successes and technical information on effective means to control and reduce or eliminate worker exposure to crystalline silica.

d.  Forming new working relationships, including partnerships and alliances, and more informal working relationships with organizations that can help disseminate information to small businesses and other employers.

e.  Working with On-Site Consultation programs, local Small Business Development Centers (SBDC), and other organizations to reach small businesses.

f.  For more outreach ideas, see the *Menu of Possible Silica Outreach Activities for the Silica Standards* in the Silica Outreach Toolbox on the Compliance Assistance webpage on the OSHA intranet.

3.  <u>Targeted Audiences for Outreach</u>.

a.  Local employers engaged in silica-related work, especially small employers (e.g., chimney repairers, stone countertop suppliers and installers).  *See also* targeted industries in <u>Appendix A</u>.

b.  Local employer associations (e.g., a local chamber of commerce).

c.  Insurance companies.

d.  Equipment manufacturers.

e.  A regional Service, Transmission, Exploration & Production Safety (STEPS) network (*see also* https://www.nationalstepsnetwork.com/regional-chapters).

f.  Local trade unions and apprenticeship programs (e.g., masons, bricklayers, railroad workers) and other worker groups.

g.  Independent contractors and the self-employed.

h.  Local hospitals, occupational health clinics, and other health organizations (e.g., state lung associations).

i.  Local professional associations (e.g., local safety councils).

j.    Temporary employment agencies providing employees to targeted employers (e.g., construction day laborers).

k.    Local building permitting authorities.

l.    Local newspapers, TV stations, trade magazines (these can help inform the public and hard-to-reach employers).

m.    Local government (e.g., health departments and departments of transportation).

n.    Local suppliers of materials or services, tool rental companies.

4.    <u>Online Materials</u>.

OSHA resources may be of assistance in this outreach effort. A variety of online resources can be accessed through OSHA's public webpage, including the OSHA Crystalline Silica Safety and Health Topics Page (https://www.osha.gov/dsg/topics/silicacrystalline/). Internal resources for silica are also available on the Compliance Assistance webpage on the OSHA intranet.

I.    <u>Coordination</u>.

1.    <u>National Office</u>.

This NEP will be coordinated by the Directorate of Enforcement Programs (DEP), Office of Health Enforcement (OHE). All questions and comments regarding this NEP should be directed to OHE. For inspection support, Area and Regional Offices may also coordinate, as needed, with the Directorate of Technical Support and Emergency Management (DTSEM), the Office of Occupational Medicine and Nursing (OOMN), the Health Response Team (HRT), and other offices. For questions about outreach support and resources, contact the Office of Outreach Services and Alliances (OOSA) in the Directorate of Cooperative and State Programs (DCSP).

2.    <u>Regional Office</u>.

Each Regional Administrator is required to identify a coordinator for this NEP who will work with the Office of Health Enforcement.

J.    <u>Program Review</u>.

To assess the effectiveness of this NEP, OHE will review the NEP on a periodic basis, as should each Regional Office. Regions that implement related LEPs and REPs should forward any periodic reports to OHE. The program review reports shall, at a minimum, address the NEP goal (*see* Section X) in accordance with established Agency procedures. Data on effectiveness may include:

1.    The number of employees covered.

2.    The number of workers removed from hazards.

3.    Reductions in worker exposures.

**EXHIBIT C**

4.      Abatement measures implemented.

5.      Number of violations related to specific targeted hazards.

6.      Any indices that relate directly to measures that may be included in the DOL Strategic Plan and/or the OSHA Operating Plan.

7.      Total number of prosecutable violations of the silica standards (including final citations resulting from the settlement or litigation of contested cases).

**EXHIBIT C**

## APPENDIX A:  Target Industries for the RCS NEP

Table 1 in this Appendix comprises the general industry/maritime NAICS codes from Table VII-5 in OSHA's RCS final rule that have the highest numbers of workers with exposures above 100 µg/m³ as a TWA (*see* 81 FR at 16427-32).[1]  These codes represent approximately the top third (33 out of 105) of all affected general industry/maritime industries in Table VII-5.  Those 33 general and maritime industries listed in Table 1 employ over 98 percent of the at-risk workers reflected in Table VII-5.  Field offices will prepare their master lists of establishments from Table 1 using the Establishment Targeting List-Generation System (ListGen).

Table 2 in this Appendix contains a list of all affected construction NAICS codes, also from Table VII-5 in the RCS final rule (*see* 81 FR at 16427).  Accompanying Table 2 is a list of construction operations likely to have RCS exposures, provided as an aid for compliance officers.  Field offices will develop establishment lists from the industries listed on Table 2 using OSHA's Construction Inspection Targeting Application (C-Target) database, local knowledge, and CSHO drive-bys.

Note that employee overexposures to RCS may occur in industries not listed in this appendix.  Similarly, it should not be assumed that employee overexposure to RCS occurs in all establishments within the industries listed in the tables below.

---

[1]  Table VII-5: Numbers of Workers Exposed to Silica (by Affected Industry and Exposure Level (µg/m³)), contains NAICS codes for each affected industry in construction and general industry/maritime (*see* 81 FR at 16427-32).  It presents the estimated number of workers in these industries that are currently at risk from RCS exposure above 25 µg/m³, 50 µg/m³, 100 µg/m³, and 250 µg/m³, as 8-hour TWAs.  Table VII-5 used 2012 NAICS codes (*see* 81 FR at 16427-32).  These industries have identical codes in the 2017 NAICS, so this Appendix A uses the 2017 NAICS codes.

Appendix A-1

**EXHIBIT C**

**Table 1. Targeted Industries in General Industry/Maritime by 2017 NAICS**

| NAICS Code | Industry |
|---|---|
| 213112 | Support Activities for Oil and Gas Operations[1] |
| 221100 | Electric Power Generation, Transmission and Distribution[1] |
|  | *221111  Hydroelectric Power Generation* |
|  | *221112  Fossil Fuel Electric Power Generation* |
|  | *221113  Nuclear Electric Power Generation* |
|  | *221114  Solar Electric Power Generation* |
|  | *221115  Wind Electric Power Generation* |
|  | *221116  Geothermal Electric Power Generation* |
|  | *221117  Biomass Electric Power Generation* |
|  | *221118  Other Electric Power Generation* |
|  | *221121  Electric Bulk Power Transmission and Control* |
|  | *221122  Electric Power Distribution* |
| 324122 | Asphalt Shingle and Coating Materials Manufacturing |
| 325510 | Paint and Coating Manufacturing |
| 327110 | Pottery, Ceramics, and Plumbing Fixture Manufacturing |
| 327120 | Clay Building Material and Refractories Manufacturing |
| 327212 | Other Pressed and Blown Glass and Glassware Manufacturing |
| 327213 | Glass Container Manufacturing |
| 327320 | Ready-Mix Concrete Manufacturing |
| 327331 | Concrete Block and Brick Manufacturing |
| 327332 | Concrete Pipe Manufacturing |
| 327390 | Other Concrete Product Manufacturing |
| 327991 | Cut Stone and Stone Product Manufacturing |
| 327992 | Ground or Treated Mineral and Earth Manufacturing |
| 327993 | Mineral Wool Manufacturing |
| 327999 | All Other Miscellaneous Nonmetallic Mineral Product Manufacturing |
| 331511 | Iron Foundries |
| 331512 | Steel Investment Foundries |
| 331513 | Steel Foundries (except Investment) |
| 331524 | Aluminum Foundries (except Die-Casting) |
| 331529 | Other Nonferrous Metal Foundries (except Die-Casting) |
| 332710 | Machine Shops |
| 332812 | Metal Coating, Engraving (except Jewelry and Silverware), and Allied Services to Manufacturers |
| 336611 | Ship Building and Repairing[1] |
| 336612 | Boat Building[1] |
| 339114 | Dental Equipment and Supplies Manufacturing |
| 339910 | Jewelry and Silverware Manufacturing |
| 339950 | Sign Manufacturing |
| 423840 | Industrial Supplies Merchant Wholesalers |

Appendix A-2

**EXHIBIT C**

| NAICS Code | Industry |
|---|---|
| 482110 | Rail transportation<br>    *482111  Line-Haul Railroads*<br>    *482112  Short Line Railroads* |
| 561730 | Landscaping Services[1] |
| 999200 | State governments[1,2] |
| 999300 | Local governments[1,2] |

[1] Industry may perform construction-like activities in-house and/or at off-site locations.

[2] For State Plan targeting only; not for federal targeting.

**EXHIBIT C**

**Table 2. Targeted Industries in Construction by 2017 NAICS**

| NAICS Code | Industry |
|---|---|
| 236100 | Residential Building Construction<br>    *236115  New Single-Family Housing Construction (except For-Sale Builders)*<br>    *236116  New Multifamily Housing Construction (except For-Sale Builders)*<br>    *236117  New Housing For-Sale Builders*<br>    *236118  Residential Remodelers* |
| 236200 | Nonresidential Building Construction<br>    *236210  Industrial Building Construction*<br>    *236220  Commercial and Institutional Building Construction* |
| 237100 | Utility System Construction<br>    *237110  Water and Sewer Line and Related Structures Construction*<br>    *237120  Oil and Gas Pipeline and Related Structures Construction*<br>    *237130  Power and Communication Line and Related Structures Construction* |
| 237200 | Land Subdivision<br>    *237210  Land Subdivision* |
| 237300 | Highway, Street, and Bridge Construction<br>    *237310  Highway, Street, and Bridge Construction* |
| 237900 | Other Heavy and Civil Engineering Construction<br>    *237990  Other Heavy and Civil Engineering Construction* |
| 238100 | Foundation, Structure, and Building Exterior Contractors<br>    *238110  Poured Concrete Foundation and Structure Contractors*<br>    *238120  Structural Steel and Precast Concrete Contractors*<br>    *238130  Framing Contractors*<br>    *238140  Masonry Contractors*<br>    *238150  Glass and Glazing Contractors*<br>    *238160  Roofing Contractors*<br>    *238170  Siding Contractors*<br>    *238190  Other Foundation, Structure, and Building Exterior Contractors* |
| 238200 | Building Equipment Contractors<br>    *238210  Electrical Contractors and Other Wiring Installation Contractors*<br>    *238220  Plumbing, Heating, and Air-Conditioning Contractors*<br>    *238290  Other Building Equipment Contractors* |
| 238300 | Building Finishing Contractors<br>    *238310  Drywall and Insulation Contractors*<br>    *238320  Painting and Wall Covering Contractors*<br>    *238330  Flooring Contractors*<br>    *238340  Tile and Terrazzo Contractors*<br>    *238350  Finish Carpentry Contractors*<br>    *238390  Other Building Finishing Contractors* |
| 238900 | Other Specialty Trade Contractors<br>    *238910  Site Preparation Contractors*<br>    *238990  All Other Specialty Trade Contractors* |

**EXHIBIT C**

**Construction Activities that May Involve RCS Exposure**

The following list is provided to help Area Offices with targeting of construction work sites by listing operations likely to have exposures to RCS, as described in the preamble, pages 16406 and 16459:

- Abrasive blasting
- Drywall finishing
- Earth drilling
- Heavy equipment operations (excavating, grading, abrading, or fracturing silica-containing materials, or demolishing concrete or masonry structures)
- Concrete and masonry hole drilling using handheld or stand-mounted drills
- Jackhammering and powered, handheld, chipping of concrete and masonry
- Masonry, concrete, or fiber-cement board cutting using portable saws, walk-behind saws, drivable or ride-on saws, rig-mounts core saws and drills, or stationary saws
- Milling of asphalt using portable or mobile machines, such as walk-behind milling machines, floor grinders, or drivable milling machines
- Rock and concrete drilling using vehicle-mounted drilling rigs and dowel drilling rigs
- Mobile concrete crushing machines
- Tuckpointing and grinding using handheld grinders for mortar removal and other than mortar removal

(Reference:  81 FR at 16406, 16459)


See also the specific equipment and tasks in the left-hand column of 29 CFR § 1926.1153(c)(1), Table 1, and the OSHA *Small Entity Compliance Guide for the Respirable Crystalline Silica Standard for Construction*, available at https://www.osha.gov/Publications/OSHA3902.pdf.  For videos of several of these tasks, see the following:

- Stationary Masonry Saws, https://www.youtube.com/watch?v=Eu0s4-ZLw9I&feature=youtu.be
- Handheld Power Saws, https://www.youtube.com/watch?v=pfYI31pF4Ng&feature=youtu.be
- Handheld and Stand-Mounted Drills, https://www.youtube.com/watch?v=Yzo-sZ_PSic&feature=youtu.be
- Jackhammers or Handheld Powered Chipping Tools, https://www.youtube.com/watch?v=e2uRD2dJ8vs&feature=youtu.be
- Handheld Grinders for Mortar Removal (Tuckpointing), https://www.youtube.com/watch?v=D8Khz9vTdAk&feature=youtu.be
- Handheld Grinders for Uses Other than Mortar Removal, https://www.youtube.com/watch?v=X520VC-M3BI&feature=youtu.be

**EXHIBIT C**

## APPENDIX B:  Supplemental Industries for the RCS NEP

*Industries in Table 1 below are not to be used for RCS NEP targeting, unless an insufficient number of establishments or inspections are generated using the industries listed in Appendix A, or where local knowledge or data is available to support adding the industry to a particular Area Office's targeting list.*

Table 1 in this Appendix contains the 72 general industry/maritime NAICS codes for affected industries from Table VII-5 of the Final Rule that are not included in Appendix A, Table 1 (*see* 81 FR at 16427-32).  These industries employ less than two percent of all workers exposed to silica.

Table 1 in this Appendix also lists 15 additional industries identified from OSHA inspection history (between October 2014 and April 2017) that had silica overexposures, but are not among the industries included in Table VII-5.

**Table 1. Supplemental Industries in General Industry by 2017 NAICS**

| NAICS Code | Industry |
|---|---|
| 213111 | Drilling Oil and Gas Wells[1] |
| 324121 | Asphalt Paving Mixture and Block Manufacturing[1,2] |
| 325194 | Cyclic Crude, Intermediate, and Gum and Wood Chemical Manufacturing[1] |
| 326291 | Rubber Product for Manufacturing Mechanical Use[1] |
| 327211 | Flat Glass Manufacturing[2] |
| 327420 | Gypsum Product Manufacturing[1] |
| 331110 | Iron and Steel Mills and Ferroalloy Manufacturing[2] |
| 331210 | Iron and Steel Pipe and Tube Manufacturing from Purchased Steel[2] |
| 331221 | Rolled Steel Shape Manufacturing[2] |
| 331222 | Steel Wire Drawing[2] |
| 331314 | Secondary Smelting and Alloying of Aluminum[2] |
| 331420 | Copper Rolling, Drawing, Extruding, and Alloying[2] |
| 331492 | Secondary Smelting, Refining, and Alloying of Nonferrous Metal (except Copper and Aluminum)[2] |
| 331523 | Nonferrous Metal Die-Casting Foundries[1] |
| 332111 | Iron and Steel Forging[2] |
| 332112 | Nonferrous Forging[2] |
| 332117 | Powder Metallurgy Part Manufacturing[2] |
| 332119 | Metal Crown, Closure, and Other Metal Stamping (except Automotive)[2] |
| 332215 | Metal Kitchen Cookware, Utensil, Cutlery, and Flatware (except Precious) Manufacturing[2] |
| 332216 | Saw Blade and Hand tool Manufacturing[2] |
| 332323 | Ornamental and Architectural Metal Work Manufacturing[2] |
| 332439 | Other Metal Container Manufacturing[2] |
| 332312 | Fabricated Structural Metal Manufacturing[1] |
| 332510 | Hardware Manufacturing[2] |

Appendix B-1

**EXHIBIT C**

| NAICS Code | Industry |
|---|---|
| 332613 | Spring Manufacturing[2] |
| 332618 | Other Fabricated Wire Product Manufacturing[2] |
| 332813 | Electroplating, Plating, Polishing, Anodizing, and Coloring[1] |
| 332911 | Industrial Valve Manufacturing[2] |
| 332912 | Fluid Power Valve and Hose Fitting Manufacturing[2] |
| 332913 | Plumbing Fixture Fitting and Trim Manufacturing[2] |
| 332919 | Other Metal Valve and Pipe Fitting Manufacturing[2] |
| 332991 | Ball and Roller Bearing Manufacturing[2] |
| 332996 | Fabricated Pipe and Pipe Fitting Manufacturing[2] |
| 332999 | All Other Miscellaneous Fabricated Metal Product Manufacturing[1,2] |
| 333318 | Other Commercial and Service Industry Machinery Manufacturing[2] |
| 333413 | Industrial and Commercial Fan and Blower and Air Purification Equipment Manufacturing[2] |
| 333414 | Heating Equipment (except Warm Air Furnaces) Manufacturing[2] |
| 333511 | Industrial Mold Manufacturing[2] |
| 333514 | Special Die and Tool, Die Set, Jig, and Fixture Manufacturing[2] |
| 333515 | Cutting Tool and Machine Tool Accessory Manufacturing[2] |
| 333517 | Machine Tool Manufacturing[2] |
| 333519 | Rolling Mill and Other Metalworking Machinery Manufacturing[2] |
| 333612 | Speed Changer, Industrial High-Speed Drive, and Gear Manufacturing[2] |
| 333613 | Mechanical Power Transmission Equipment Manufacturing[2] |
| 333911 | Pump and Pumping Equipment Manufacturing[2] |
| 333912 | Air and Gas Compressor Manufacturing[2] |
| 333991 | Power-Driven Hand Tool Manufacturing[2] |
| 333992 | Welding and Soldering Equipment Manufacturing[2] |
| 333993 | Packaging Machinery Manufacturing[2] |
| 333994 | Industrial Process Furnace and Oven Manufacturing[1,2] |
| 333995 | Fluid Power Cylinder and Actuator Manufacturing[2] |
| 333996 | Fluid Power Pump and Motor Manufacturing[2] |
| 333997 | Scale and Balance Manufacturing[2] |
| 333999 | All Other Miscellaneous General Purpose Machinery Manufacturing[1,2] |
| 334519 | Other Measuring and Controlling Device Manufacturing[2] |
| 335210 | Small Electrical Appliance Manufacturing[2] |
| 335221 | Household Cooking Appliance Manufacturing[2] |
| 335222 | Household Refrigerator and Home Freezer Manufacturing[2] |
| 335224 | Household Laundry Equipment Manufacturing[2] |
| 335228 | Other Major Household Appliance Manufacturing[2] |
| 336111 | Automobile Manufacturing[2] |
| 336112 | Light Truck and Utility Vehicle Manufacturing[2] |
| 336120 | Heavy Duty Truck Manufacturing[2] |
| 336211 | Motor Vehicle Body Manufacturing[2] |

**EXHIBIT C**

| NAICS Code | Industry |
|---|---|
| 336212 | Truck Trailer Manufacturing[1,2] |
| 336213 | Motor Home Manufacturing[2] |
| 336310 | Motor Vehicle Gasoline Engine and Engine Parts Manufacturing[2] |
| 336320 | Motor Vehicle Electrical and Electronic Equipment Manufacturing[2] |
| 336330 | Motor Vehicle Steering and Suspension Components (except Spring) Manufacturing[2] |
| 336340 | Motor Vehicle Brake System Manufacturing[1,2] |
| 336350 | Motor Vehicle Transmission and Power Train Parts Manufacturing[2] |
| 336370 | Motor Vehicle Metal Stamping[2] |
| 336390 | Other Motor Vehicle Parts Manufacturing[2] |
| 336992 | Military Armored Vehicle, Tank, and Tank Component Manufacturing[2] |
| 337110 | Wood Kitchen Cabinet and Countertop Manufacturing[1,2] |
| 337127 | Institutional Furniture Manufacturing[1] |
| 337215 | Showcase, Partition, Shelving, and Locker Manufacturing[2] |
| 339116 | Dental Laboratories[1,2] |
| 423320 | Brick, Stone, and Related Construction Material Merchant Wholesalers[1] |
| 424950 | Paint, Varnish, and Supplies Merchant Wholesalers[1] |
| 444110 | Home Centers[1,2] |
| 541310 | Architectural Services[1] |
| 541410 | Interior Design Services[1] |
| 561320 | Temporary Help Services[1] |
| 621210 | Offices of Dentists[2] |
| 811121 | Automotive Body, Paint, and Interior Repair and Maintenance[1] |
| 811310 | Commercial and Industrial Machinery and Equipment (except Automotive and Electronic) Repair and Maintenance[1] |

[1] In OSHA inspection history (overexposures to silica at former PELs).

[2] Industry from Table VII-5 of the Final Rule that is not included in Appendix A, Table 1.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

IN THE MATTER OF:

Inspection of the workplace                Case No. 8:25MJ357
located at and near

Bldg. 1200
305 Looking Glass Avenue
Offutt AFB
Sarpy County, Nebraska 68113

under the control or custody of

AMENTUM SERVICES, INC.

**ADMINISTRATIVE SEARCH WARRANT**

TO:    Scott Jacobson
       Assistant Area Director
       Omaha Area Office
       Occupational Safety and Health Administration

Application having been made, and reasonable cause having been shown for the inspection of the workplace described as Amentum Services, Inc. and located at Bldg. 1200, 305 Looking Glass Avenue, Offutt AFB, Sarpy County, Nebraska 68113.

IT IS HEREBY ORDERED that, pursuant to section 8(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, 657(a), hereinafter referred to as the OSH Act, YOU OR YOUR DULY DESIGNATED REPRESENTATIVES ARE AUTHORIZED to enter the above-described workplace during regular working hours or at other reasonable times, to make an inspection and investigation of potential hazards raised in complaints and potential hazards from exposures to respirable crystalline silica.

The inspection will include relevant records, files, and papers, and any hazards observed in plain view.  The inspection will be conducted during regular working hours or at other

reasonable times, within reasonable limits, and in a reasonable manner, including access to employees for voluntary questions in a private setting, and the taking of photographs, videotape, environmental samples (including the use of personal sampling equipment), and measurements when necessary. The compliance officer's credentials will be presented, and the inspection will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

You are hereby directed not to disclose any information obtained during the inspection that is designated to be a trade secret, as defined by 18 U.S.C. § 1905, except that such information may be disclosed to other officers or employees concerned with carrying out the OSH Act or when relevant in any proceeding under the OSH Act.

A return shall be made to this Court showing that the inspection has been completed. The inspection authorized herein shall be initiated within fourteen (14) days, and a return shall be made to the Court within fourteen (14) days following completion of the inspection.

DATED: 6/4/2025

United States Magistrate Judge

<u>RETURN OF SERVICE</u>

I hereby certify that a copy of the within warrant was duly served on the company named

hereon on

_____

_____

_____

<u>RETURN</u>

Inspection of the establishment described in this warrant was made on

_____.

_____
Compliance Safety and Health Officer
Occupational Safety and Health Administration
United States Department of Labor